so, although he knew nothing of Mr. Strutt's wheel, he remedied the defects of Mr. Strutt's wheel, then there is no reason for saying the plaintiff's patent is not good. It depends entirely upon what is your opinion upon the evidence with respect to that." Gibbs, C. J., in the case of Brown, in his charge to the jury, says: "Now, I wish to have what I state upon this subject observed by the counsel on both sides, that they may be aware how I put it. If a combination of those parts existed before; if a combination of a certain number of these parts existed up to a given point before, and Mr. Brown's invention sprung from that point, and added other combinations to it, then I think the specification stating the whole machine as his invention is bad. If, on the other hand, you think he has the merit of inventing the combination of all the parts from the beginning, then I think the specification is good, and that he is entitled to your verdict."

This, therefore, is the conclusion to which I feel myself obliged to come—that as between Burrows and Wetherill the priority of invention ought to be awarded to Burrows, and that Wetherill is not entitled to a patent upon his present application; and I do accordingly so decide and determine. As between Burrows and Jones, there having been no decision by the commissioner, there is, of course, no such case before me on appeal.

[NOTE. The patent No. 13,416 was granted to Burrows, August 15, 1855. For a decision limiting the scope of the patent, see Burrows v. Lehigh Zinc Co., Case No. 2,207.]

BURRUS (HUIDEKOPER v.). See Cases Nos. 6,848 and 6,849.

## Case No. 2,209.

In re BURT et al.

[12 Blatchf. 252;[1] 13 N. B. R. 137.]

Circuit Court, N. D. New York. July 10, 1874.

STATUTORY LIEN EMBODIED IN CONTRACT — VALIDITY—EFFECT OF NON-COMPLIANCE WITH CONDITION IN CONTRACT.

1. B. made a written contract with the agent of the state prison at Auburn, in New York, for the services of a certain number of convicts. The contract contained a provision, that any debt which might become due from B. upon the contract, should be a lien in favor of the state upon the machinery and tools used and owned by B. in operating such contract upon the prison premises; that such lien should commence with the contract, and should continue during the existence of the contract, and until the debt should be satisfied or cancelled; and that it should be lawful for the agent of the prison, whenever any sum should be due from B., to proceed to satisfy such lien by a sale of the property affected by such lien, in the same manner as by a sale upon a chattel mortgage. B. was adjudged a bankrupt. owing, when the petition in bankruptcy was filed, a debt to the agent, for the

services of convicts under the contract. The agent claimed a lien on the machinery and tools of B., to satisfy such debt, and seized them and advertised them for sale. The foregoing provision in the contract was inserted in it in pursuance of a provision of a statute law of New York, which required such a provision to be inserted in every such contract, and which declared that a lien should thereupon commence and should continue until the debt should be satisfied: *Held*, that the claim of the agent to such lien was valid.

2. The legislature of New York has full power to declare what should constitute a lien.

3. The statute provided that the contract should contain a clause requiring the contractor to deposit a certain sum of money, and that no contract should be valid unless such deposit should be made: *Held*, that the contractor could not, by reason of his failure to make such deposit, insist that the contract was invalid.

[Appeal from the district court of the United States for the northern district of New York.

[In bankruptcy. The assignee of Edward Burt and Thomas Towne, bankrupts, appeals from a decision of the district court affirming an order of the register (case not reported) allowing a statutory lien on certain machinery of the bankrupt, the lien being claimed by a state prison agent, by reason of a contract between him on behalf of the state and the bankrupts. Affirmed.]

Charles F. Durston and John T. Pingree, for assignee.

William E. Hughitt, for creditor.

HUNT, Circuit Justice. The question whether the contract of August 1st, 1871, secures to the state a lien upon the machinery and tools of the bankrupts, is the only important question in the case. Burt & Towne were manufacturers of doors, blinds, sashes, and similar articles. They entered into a contract with the agent of the state prison at Auburn, for the labor and services of a certain number of convicts, whose services were to be used in a room of the prison to be provided by the agent. Among other provisions, the contract contained the following, viz.: "10th. Any debt which may be due or become due from any contractor upon his contract, shall be a lien in favor of the state upon the machinery and tools used and owned by such contractor in operating such contract upon the prison premises. Such lien shall commence with the contract, and shall continue during the existence of the contract, and until the claim or debt shall be satisfied or cancelled, and it shall be lawful for the agent and warden of the prison, under the direction of the inspectors, or a majority of them. whenever any sum shall be due from the contractor, to proceed to satisfy such lien by a sale of the property affected by such lien, in the same manner as by a sale upon a chattel mortgage." The contractors filed their petition, and, on the 15th of July, 1873, were adjudged bankrupts. At the time of filing their petition they were indebted to the agent for the labor and serv-

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

ices of convicts under this contract, in the sum of $5,128.47. The agent seized the machinery and tools of the contractors, under the authority of section ten, above cited, and advertised them for sale to satisfy this debt. The register held that the claim of the agent was valid. Upon appeal to the district court, this holding was affirmed, and the assignee in bankruptcy appeals from that decision to this court.

The statute of the state of New York (Laws 1863, p. 803, c. 465, § 1) enacts as follows: "In all contracts which may hereafter be let or awarded for convict labor at any prison, a clause shall be inserted, that any debt which may be or become due from any contractor upon such contract, shall be a lien in favor of the prison, upon the machinery and tools used or owned by such contractor in operating such contract upon the prison premises; and such lien shall thereupon commence with such contract, and shall continue during the existence of the contract, and until the claim or debt shall be satisfied or cancelled." The assignee, who is the appellant here, objects to the decision of the district court, on the grounds: 1st. That the statute of 1863 does not, of itself, create a lien, that the alleged lien is not a chattel mortgage, as it does not, in words, transfer any title, and, if a mortgage, it is void for want of filing, and that it is not a pledge, as needing the essential element of delivery; 2. That the contract is void for the reason that no deposit of money was made, as required by the act of 1863.

1. In the case of ordinary contracts, the suggestions made under the first point would be · entitled to grave consideration. A professed transfer of title, or a formal incumbrance upon the subject, is the ordinary and, perhaps, the necessary mode of creating a chattel mortgage. In the case of ordinary mortgages it is clear, also, that, as against creditors, a filing and a refiling of the mortgage is necessary. So, it is the general rule, that delivery is essential to the validity of a pledge; and the argument is, at least, a fair one, that the agent never had possession of this property. McCaffrey v. Wooden, 62 Barb. 316. The answer to the argument I conceive to be this—that the legislative power is competent to alter and modify the rules referred to. It may say what particular words shall be sufficient to create a chattel mortgage, or, that no words of transfer shall be required, or that, in particular cases, no filing shall be necessary, or that delivery shall not be requisite to the validity of a pledge. The legislature has full power to declare what shall constitute a lien, and, if no constitutional principle is violated, its declaration is conclusive.

In the 1st section of the act of 1863, the legislature has declared, emphatically, that what was done in this case created a lien upon the tools and machinery in question, which should continue until the satisfaction of the debt. If there shall be inserted in a contract for convict labor a clause, that any debt which may become due from the contractor shall be a lien upon the tools and machinery used by such contractor in operating the contract, such lien shall thereupon commence, and shall continue until the debt be paid. "Such lien shall thereupon commence," i. e., the lien described, "in favor of the prison, upon the machinery and tools used in operating such contract." It shall commence "thereupon," or as soon as, or upon, the insertion of that clause in the contract. The lien then comes into existence, and continues until the debt is paid. It is a statutory lien, created by express statute, for the benefit of the state. Mechanics' liens are authorized by statute, and in various forms and under different circumstances. The lien of an execution, when it shall commence, when end, what shall or shall not release it, is the subject of statutory regulation. The same is true of the lien of a judgment. In this case, the lien exists because the statute gives it, and as the statute creates it. Nothing other or further than the existence of the requisites of the statute is necessary to bring the lien into existence, or to continue its existence until the debt is paid.

2. Nor is there force in the objection, that the contract is void because no deposit was made by the contractor, when the contract was entered into. The statute provides, that a clause shall be inserted in the contract, requiring the contractor to deposit with the comptroller a sum of money not less than $500, nor more than $2,000, as the inspector may determine, "and no contract shall be valid until such deposit shall be made." This is a provision for the benefit of the state, and in which the contractor can claim no beneficial interest. He cannot insist upon the validity of a contract until he performs this requirement. But his neglect and failure cannot be claimed by himself for his own benefit. The state may say, "you have not performed what the law requires, and we annul the contract;" but the contractor is not thus at liberty to take advantage of his own neglect. There are numerous provisions of the statute containing similar language, as, that the conveyance shall be "absolutely void," or the contract shall be "utterly void;" but it has never been held that the party in a case, when he was in default, could urge his own default as a ground of the invalidity of the contract, and in his own favor.

The order of the district court, affirming the order of the register, must be affirmed.